UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SURMODICS, INC. | Case No. 11-CV-1450 (PJS/AJB) |
| Plaintiff, | |
| v. | ORDER |
| SOUTHERN RESEARCH INSTITUTE, | |
| Defendant. | |

Jana M. Gaffaney, Deborah A. Ellingboe, and John B. Holland, FAEGRE BAKER DANIELS LLP, for plaintiff.

Thomas W. Thagard III and James E. McDaniel, MAYNARD, COOPER & GALE P.C.; Mark G. Schroeder and Michael H. Streater, BRIGGS & MORGAN, P.A., for defendant.

This matter is before the Court on the cross-motions for summary judgment of plaintiff SurModics, Inc. ("SurModics") and defendant Southern Research Institute ("SRI"). Both SurModics and SRI seek a declaration of their rights under a contract governing SRI's sale of a third company — Brookwood Pharmaceuticals, Inc. ("Brookwood") — to SurModics. The parties' summary-judgment motions are each granted in part and denied in part, for the reasons described below.

I. FACTS

*A. Background*

SRI is an Alabama non-profit corporation that conducts pharmaceutical research. SRI has long compensated its employees pursuant to what are known as the "Awards Policies." Under the Awards Policies, current and former employees of SRI are paid royalties on income derived from intellectual property that those employees helped to develop. Compl. ¶ 13 [ECF No. 1].

In 2005, SRI spun off its drug-delivery group into Brookwood, which became a wholly-owned for-profit subsidiary of SRI. Compl. ¶ 11. SRI transferred some of its intellectual property to Brookwood, including United States Patent Number 5,407,609 ("the '609 Patent"). Compl. ¶ 14. Brookwood, in turn, assumed SRI's duty to pay royalties owed under the Awards Policies with respect to the '609 Patent and the other intellectual property that had been transferred to Brookwood.

In July 2007, SRI sold Brookwood to SurModics for approximately $40 million, plus additional amounts contingent on Brookwood meeting certain revenue thresholds. Compl. ¶ 12; Pl. Mem. in Supp. at 2 [ECF No. 33]. After it purchased Brookwood and its intellectual property, SurModics licensed the '609 Patent to two companies: Genentech, Inc. ("Genentech") and Edge Therapeutics, Inc. ("Edge"). Both deals required certain upfront payments to SurModics, followed by future payments that were contingent on various revenue thresholds. *See* Counterclaim ¶¶ 2-3 [ECF No. 7 at 13]; Def. Mem. in Supp at 7-8 [ECF No. 27].

In April 2009, two former employees of SRI — Richard M. Gilley (an inventor or co-inventor of the '609 Patent) and Herbert M. Blatter (a contributor to the '609 Patent) — sued SRI in Alabama state court. Compl. ¶¶ 23-24. In their original complaint, Gilley and Blatter alleged that SRI owed them a portion of the Brookwood sale price pursuant to the Awards Policies. *See* Def. Ex. B ¶¶ 18, 22 [ECF No. 8-2]. The Court will refer to this as the "purchase-price" claim. Gilley and Blatter later amended their complaint, adding SurModics and Brookwood[1] as defendants and seeking recovery of royalty payments allegedly owed to them on account of the

---

[1] Brookwood had by that time been renamed "SurModics Pharmaceuticals, Inc." To avoid confusion, the Court will refer to this entity as "Brookwood" throughout this order.

Genentech and Edge contracts. *See* Def. Exs. C-D [ECF Nos. 8-3 & 8-4]. The Court will refer to this as the "royalties" claim. The Alabama litigation is ongoing.

This lawsuit involves the question of who bears responsibility for the financial losses that SRI and SurModics have experienced — and may in the future experience — as a result of the Alabama litigation. That question turns on the terms of the Stock Purchase Agreement (the "Agreement") that governed SRI's sale of Brookwood to SurModics. Pl. Ex. 1 [ECF No. 35-1 at 1-59] ("Agreement"). The Court now turns to that Agreement.

## B. The Stock Purchase Agreement

Under the Agreement, SRI and SurModics have a number of ongoing obligations to each other and to the employees of Brookwood and SRI, including obligations related to the Awards Policies. Under the Awards Policies, current and former employees of Brookwood and SRI remain entitled to royalties when Brookwood earns income on intellectual property that those employees helped to develop. Section 7.13 of the Agreement divides responsibility for paying those royalties between SRI and SurModics. Pursuant to the Agreement, liability for royalty payments to Brookwood and SRI employees is separated into three "buckets":

> *Bucket 1* consists of programs identified in Schedule 7.13(b) of the Agreement. SRI assumed all liability for the payment of royalties owed pursuant to those programs. *See* Agreement § 7.13(b).
>
> *Bucket 2* consists of programs identified in Schedule 4.14(j) of the Agreement. SRI and SurModics share the liability for the payment of royalties owed pursuant to those programs. *See* Agreement § 7.13(c).
>
> *Bucket 3* consists of royalties owed "in connection with any future programs not identified on Schedule 4.14(j) or Schedule 7.13(b)." Agreement § 7.13(d)(i). SurModics assumed all liability for the payment of royalties owed pursuant to those programs insofar as any such royalties "do not exceed 20% of the revenues to which they relate." Agreement § 7.13(d)(i)(2).

The parties agree that, if Gilley and Blatter are awarded damages on their purchase-price claim, SRI will bear sole responsibility for paying those damages. The parties further agree that, if Gilley and Blatter are awarded damages on their royalties claim, SurModics will bear sole responsibility for paying those damages. (The parties disagree about the source of that obligation, but they nevertheless agree that SurModics is solely responsible for paying any damages that are awarded on the royalties claim.) Thus, the dispute between SRI and SurModics is not about who bears responsibility for any *damages* awarded in the Alabama litigation, but who bears responsibility for the *attorney's fees* that SRI and SurModics each incur in defending the Alabama litigation.

Indeed, the dispute is even narrower than that. The parties agree that SRI must bear its own attorney's fees for defending the purchase-price claim. The parties also agree that, insofar as SurModics incurs attorney's fees in connection with the purchase-price claim, SRI must indemnify SurModics for that expense. What the parties dispute, though, is who bears responsibility for the attorney's fees incurred by SRI and SurModics in defending the royalties claim. The parties agree that their dispute is governed by §§ 8.1 and 8.2 of the Agreement, but they disagree about what §§ 8.1 and 8.2 require.

Section 8.1 imposes obligations on SRI to indemnify SurModics for "Loss" — including "reasonable attorneys' fees or expenses"[2] — under certain circumstances. Section 8.2 imposes obligations on SurModics to indemnify SRI for "Loss" (again, including reasonable attorney's fees and expenses) under other circumstances. Obviously, the two indemnification provisions differ, in that § 8.1 imposes obligations on SRI to indemnify SurModics, while § 8.2 imposes

---

[2]The Agreement broadly defines "Loss" as "any claim, loss, fine, penalty, cost or expense (including reasonable attorneys' fees or expenses) or damage." Agreement at 54.

obligations on SurModics to indemnify SRI.  But the two indemnification provisions differ in other respects as well.  Notably for purposes of this case, § 8.1(e) of the Agreement requires SRI to "indemnify, defend, and hold harmless SurModics from and against any and all Loss incurred . . . by SurModics . . . related to or arising out of any . . . claims by any current and former employees of SRI or Brookwood for royalties or other payments pursuant to the Awards Policies . . . .," whereas § 8.2(b) of the Agreement requires SurModics to "indemnify, defend, and hold harmless SRI from and against any and all Loss incurred . . . by SRI . . . related to or arising out of any . . . breach or nonperformance of any covenant or agreement of or to be performed by SurModics pursuant hereto . . . ."

SRI argues that, under the Agreement's indemnification provisions, SurModics must pay the attorney's fees that SurModics incurs in defending the royalties claim and indemnify SRI for any fees that SRI incurs in defending that same claim.  SurModics argues that, under those same indemnification provisions, SRI must pay the attorney's fees that SRI incurs in defending the royalties claim and indemnify SurModics for any fees that SurModics incurs in defending that same claim.  Moreover, SurModics argues that it is entitled to indemnification from SRI on an ongoing basis, while SRI argues that, *if* it is obligated to indemnify SurModics, it is not required to do so until the Alabama litigation is concluded.  Each party seeks a declaration of its rights under the Agreement — which, of course, each party insists is unambiguous — and each party has filed a motion for summary judgment.[3]  ECF Nos. 25 & 31.

---

[3]SurModics and SRI agree that "the issues to be decided [in this action] are limited to a declaration of the parties' indemnification rights under the contract.  All issues of damages, fees incurred, and reasonableness of fees shall be raised in a separate action." Def. Mem. in Supp. at 2 n.1.

## II. ANALYSIS

### *A. Duty to Indemnify*

The Court agrees with the parties about one thing: The Agreement is indeed unambiguous about who must indemnify whom for attorney's fees incurred in defending the royalties claim. But the Court finds that both parties argue for interpretations of the Agreement that conflict with its clear terms. The main flaw in the analysis of both parties is their assumption that *either* SRI is obligated to indemnify SurModics (and SurModics is not obligated to indemnify SRI) *or* SurModics is obligated to indemnify SRI (and SRI is not obligated to indemnify SurModics). It does not seem to have occurred to the parties that *both* SRI *and* SurModics might be obligated to indemnify the other. The parties failed to consider this possibility because they failed to distinguish between SRI's obligation to indemnify SurModics and SurModics's obligation to indemnify SRI. Those are different obligations, that are addressed in different provisions of the Agreement, and that differ significantly in scope. To ascertain SRI's obligations, the Court must interpret § 8.1; to ascertain SurModics's obligations, the Court must interpret § 8.2. The Court now turns to those provisions.

#### 1. SurModics's Obligation to Indemnify SRI

What obligation does SurModics have to indemnify SRI for any attorney's fees that SRI incurs in defending the royalties claim?[4] Section 8.2(b) of the Agreement requires SurModics to indemnify SRI for "any and all Loss incurred or otherwise received or sustained by SRI . . . arising out of any . . . breach or nonperformance of any covenant or agreement of or to be

---

[4]SurModics insists that SRI will not have to incur any such attorney's fees, since the royalties claim is against SurModics, not SRI. For present purposes, however, the Court will assume that SRI will indeed incur such fees.

performed by SurModics pursuant hereto . . . ." If SurModics *wins* the royalties claim — that is, if the Alabama court finds that, under the Awards Policies, Gilley and Blatter are *not* entitled to royalties on account of the Genentech and Edge contracts — then any attorney's fees that SRI incurs defending the royalties claim is not a "Loss incurred . . . by SRI . . . arising out of any . . . *breach* . . . of any [provision of the Agreement]." Agreement § 8.2(b) (emphasis added). Under § 8.2(b), SurModics is obligated to indemnify SRI only when SurModics has "breach[ed]" a provision of the Agreement. If Gilley and Blatter lose their royalties claim, then SurModics did not breach any obligation under the Agreement to pay royalties — and if SurModics did not breach any obligation under the Agreement, it has no duty to indemnify SRI.

By contrast, if SurModics *loses* the royalties claim — that is, if the Alabama court finds that, under the Awards Policies, Gilley and Blatter *are* entitled to royalties on account of the Genentech and Edge contracts — then any attorney's fees that SRI incurs defending the royalties claim *is* a "Loss incurred . . . by SRI . . . arising out of any . . . breach . . . of any [provision of the Agreement]." Agreement § 8.2(b). The parties agree that the Genentech and Edge contracts are Bucket 3 programs and that any royalties owed to Gilley and Blatter from the Genentech and Edge contracts "do not exceed 20% of the revenues to which they relate . . . ." Agreement § 7.13(d)(i)(2). Therefore, the Agreement makes SurModics responsible for paying any royalties owed to Gilley and Blatter under the Awards Policies on account of the Genentech and Edge contracts. *Id*.

To be clear: The Agreement itself — and not just the Awards Policies — obligates SurModics to make the payments that it is required to make under the Awards Policies. Section 7.13(d)(i)(2) provides that, with respect to Bucket 3 royalties that "do not exceed 20% of

the revenues to which they relate, SurModics shall cause Brookwood to assume all liabilities and obligations for the payment of such royalties to such current or former employees." And § 7.13 further provides that "[a]ll payments to be made by Brookwood pursuant to this Section 7.13 . . . shall be delivered to SRI . . . ." In short, if the Alabama court finds that SurModics breached the Awards Policies by failing to make royalty payments to Gilley and Blatter, then the Alabama court will necessarily be finding that SurModics breached the *Agreement* — because the Agreement requires SurModics to make the payments that it is required to make under the Awards Policies. And if SurModics breached the *Agreement*, then § 8.2(b) requires it to indemnify SRI for any attorney's fees that SRI incurred because of that breach — i.e., attorney's fees that SRI incurred defending the royalties claim that arose out of SurModics's breach.

All of this is clear on the face of the Agreement. Yet SurModics makes three arguments for why it has no obligation to indemnify SRI for attorney's fees that SRI incurs because of a breach of the Awards Policies (and therefore of the Agreement) by SurModics.

First, SurModics relies on the canon that "[s]pecific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one." *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. Super. Ct. 2005).[5] According to SurModics, § 8.1(e) specifically governs claims by SRI employees for royalties under the Awards Policies, while § 8.2(b) governs breaches of the Agreement more generally. Therefore, SurModics argues, § 8.1(e) trumps § 8.2(b), leaving SRI with no obligation to indemnify pursuant to § 8.2(b).

---

[5]The Agreement includes a choice-of-law provision specifying that it "will be governed by and construed in accordance with the laws of the State of Delaware . . . ." Agreement § 9.8. The parties agree that Delaware law controls in this case.

But the canon that specific language controls over general language only applies when the specific and general provisions *address the same issue* and, in addressing the same issue, the "specific and general provisions conflict." *DCV Holdings*, 889 A.2d at 961. Sections 8.1(e) and 8.2(b) do not conflict; indeed, § 8.1(e) and § 8.2(b) do not even address the same subject matter. As the Court has already emphasized, § 8.1(e) imposes obligations on *SRI* to indemnify *SurModics* for certain losses that *SurModics* experiences, and § 8.2(b) imposes obligations on *SurModics* to indemnify *SRI* for different losses that *SRI* experiences. Because § 8.1(e) does not address the same losses as § 8.2(b), it obviously does not address them more specifically, and the two provisions obviously do not conflict.

Second, SurModics argues that § 8.2(e) nullifies SRI's right to indemnification under § 8.2(b). Under § 8.2(e), SurModics must indemnify SRI for "Liabilities arising out of the post-Closing operations of Brookwood . . . *excluding* any Liabilities for which . . . SurModics . . . [is] entitled to indemnification pursuant to . . . Article 8" of the Agreement. (Emphasis added). SurModics argues — and, as discussed below, the Court agrees — that under § 8.1(e), SRI is required to indemnify SurModics for attorney's fees that SurModics incurs in defending the royalties claim. Thus, says SurModics, because all attorney's fees incurred in defending the royalties claim "aris[e] out of the post-Closing operations of Brookwood," and because the attorney's fees that SurModics incurs defending the royalties claim is a "Liabilit[y] for which . . . SurModics . . . [is] entitled to indemnification," § 8.2(e) exempts SurModics from having to indemnify SRI for the attorney's fees that SRI incurs defending the royalties claim.

If this argument seems difficult to understand, it is because SurModics has twisted § 8.2(e) beyond recognition. Section 8.2(e) is, of course, found in § 8.2. As the Court has

emphasized, § 8.2 applies only when SRI has suffered a loss, and § 8.2 defines when SurModics must identify SRI for that loss. The loss in question is the attorney's fees that SRI incurs in defending the royalties claim in the Alabama litigation. This liability indisputably "aris[es] out of the post-Closing operations of Brookwood," and thus, under § 8.2(e), SurModics is obligated to indemnify SRI for this liability.

It is true that § 8.2(e) goes on to provide an exception to SurModics's obligation to indemnify SRI for a liability of SRI that "aris[es] out of the post-Closing operations of Brookwood": If that liability — that is, *that liability of SRI* — is *also* a liability "for which . . . *SurModics* . . . [is] entitled to indemnification pursuant to . . . Article 8," then SurModics does not have any obligation to indemnify SRI. Obviously, this exception only applies when SurModics and SRI are *jointly* liable for the *same* liability. Here, however, the liability in question is SRI's liability to its attorneys for the fees billed in connection with defending SRI against the royalties claim. Only SRI is liable for those attorney's fees; SurModics does not owe any money to SRI's lawyers. Because this is not even a *liability* of SurModics — much less a liability "for which . . . SurModics . . . [is] entitled to indemnification pursuant to . . . Article 8" — the exception in § 8.2(e) clearly does not apply.

Finally, SurModics points out that § 8.2(b) of the Agreement requires SurModics to indemnify SRI for "Loss . . . arising out of any . . . breach . . . of any covenant . . . [of the Agreement] by SurModics . . . ." Even if SurModics loses the royalties claim, SurModics argues, it will only have been found to have violated the Awards Policies, not the Agreement — and thus § 8.2 will not require indemnification of SRI. This argument is frivolous.[6] As the Court

---

[6]This argument also conflicts with SurModics's first argument, which was that § 8.1(e)
(continued...)

explained above, the *Agreement* requires SurModics to make the payments required by the Awards Policies. Thus, when SurModics fails to make those payments, it violates the Agreement. When Agreement B obligates a party to make the payments required under Agreement A — and when the party then fails to make the payments required under Agreement A — the party obviously breaches Agreement B.

In sum, then, the Court holds as follows: If SurModics wins the royalties claim — that is, if the Alabama court finds that, under the Awards Policies, Gilley and Blatter are not entitled to royalties on account of the Genentech and Edge contracts — then SurModics will have no obligation to indemnify SRI for any attorney's fees that SRI incurs in defending the royalties claim. If SurModics loses the royalties claim — that is, if the Alabama court finds that, under the Awards Policies, Gilley and Blatter are entitled to royalties on account of the Genentech and Edge contracts — then SurModics will be required to indemnify SRI for any attorney's fees that SRI incurs in defending the royalties claim.

2. SRI's Obligation to Indemnify SurModics

What obligation does SRI have to indemnify SurModics for any attorney's fees that SurModics incurs in defending the royalties claim? In addressing this question, SRI's brief focuses to a large extent on § 8.2(b) of the Agreement. As described above, however, § 8.2(b) is irrelevant. Section 8.2(b) addresses the obligation of SurModics to indemnify SRI; it has nothing to do with the obligation of SRI to indemnify SurModics. That obligation is defined in § 8.1.

---

[6](...continued)
(which governs claims by SRI employees for royalties under the Awards Policies) is a more specific application of § 8.2(b) (which governs breaches of the Agreement).

Section 8.1(e) requires SRI to indemnify SurModics for "any and all Loss incurred or otherwise received or sustained by SurModics . . . arising out of any . . . claims by any current and former employees of SRI or Brookwood for royalties or other payments pursuant to the Awards Policies . . . ." Without question, the royalties claims made by Gilley and Blatter are "claims by . . . former employees of SRI or Brookwood for royalties or other payments pursuant to the Awards Policies." And without question, the attorney's fees incurred by SurModics in defending those claims are a "Loss" that "aris[es] out of" those claims. Thus, SRI must indemnify SurModics for the attorney's fees that SurModics incurs in defending the royalties claims.[7]

This, too, is clear from the face of the Agreement. But now it is SRI's turn to make strained arguments for avoiding the clear terms of the Agreement. SRI makes two such arguments:

First, SRI notes that § 8.1(e) is "[s]ubject to the other terms of . . . Article 8," Agreement § 8.1, and that § 8.2 is such a "term." As discussed, § 8.2(b) requires SurModics to indemnify

---

[7]Indeed, viewed in isolation, § 8.1(e) would also require SRI to indemnify SurModics for any *judgment* against SurModics on the royalties claims. But SurModics concedes that, notwithstanding the terms of § 8.1(e), SurModics is solely responsible for any judgment entered against it (or, for that matter, against SRI) on the royalties claims. SurModics's concession reflects the fact that another provision of the Agreement — § 7.13(d)(i)(2) — specifically provides that "[f]or any such royalties [on Bucket 3 programs] that do not exceed 20% of the revenues to which they relate, SurModics shall cause Brookwood to assume all liabilities and obligations for the payment of such royalties to such current or former employees." As noted above, the parties agree that the Genentech and Edge contracts are Bucket 3 programs and that any royalties owed to Gilley and Blatter on those programs "do not exceed 20% of the revenues to which they relate . . . ."

Critically, though, § 7.13(d)(i)(2) imposes on SurModics only the responsibility to pay "royalties." Attorney's fees are not "royalties." Thus, the specific provisions of § 7.13(d)(i)(2) trump the more general provisions of § 8.1(e) only with respect to any judgment entered on the royalties claims, and not with respect to any attorney's fees incurred in defending those claims.

SRI for losses that SRI incurs because of a breach of the Agreement by SurModics. SRI argues that this provision essentially immunizes SRI from any obligation to indemnify *SurModics* for losses that *SurModics* incurs because of a breach of the Agreement by SurModics. In other words, because the royalties claim is a claim that SurModics breached the Agreement, SRI argues that § 8.2(b) both (1) obligates SurModics to indemnify SRI for the attorney's fees incurred by SRI in defending the royalties claim; and (2) negates SRI's obligation under § 8.1(e) to indemnify SurModics for the attorney's fees incurred by SurModics in defending the royalties claim.

There are at least two major problems with SRI's argument. First, as the Court has repeatedly pointed out, § 8.1 and § 8.2 address completely different topics. Both § 8.1 *and* § 8.2 are made "[s]ubject to the other terms of . . . Article 8" — meaning that both § 8.1 and § 8.2 are made subject to each other (as well as to many other provisions found in Article 8) — but that does not mean that the two somehow nullify each other, for the simple reason that the two do not even address the same subject matter. Again, § 8.1 addresses losses that *SurModics* incurs, and, in certain circumstances, obligates SRI to indemnify SurModics for those losses. Section 8.2, by contrast, addresses losses that *SRI* incurs, and, in different circumstances, obligates SurModics to indemnify SRI for those losses. Thus, the fact that § 8.2(b) requires SurModics to indemnify SRI for losses that SRI incurs because of a breach of the Agreement by SurModics is simply irrelevant to the question of whether § 8.1(e) requires SRI to indemnify SurModics for losses that SurModics incurs because of claims of Brookwood or SRI employees for royalties under the Awards Policies — even claims that allege that SurModics breached the Awards Policies and therefore the Agreement.

And that leads to the second major problem with SRI's argument: It would entirely nullify § 8.1(e). Again, § 8.1(e) requires SRI to indemnify SurModics for "any and all Loss incurred or otherwise received or sustained by SurModics . . . arising out of any . . . claims by any current and former employees of SRI or Brookwood for royalties or other payments pursuant to the Awards Policies . . . ." *Every* such claim against SurModics — that is, *every* claim for "royalties or other payments pursuant to the Awards Policies" — is *necessarily* a claim that SurModics breached the Agreement, because, as the Court has already explained, § 7.13 of the Agreement obligates SurModics to make the payments required by the Awards Policies. Therefore, if SRI's reading of § 8.2(b) were correct — that is, if § 8.2(b) relieved SRI of any obligation to indemnify SurModics for losses that arise because of a breach of the Agreement by SurModics — then SurModics would *never* be entitled to indemnification under § 8.1(e). Section 8.1(e) would serve no purpose, belying the canon of contractual interpretation that "[i]n upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein." *E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985).

SRI's second argument is no more convincing than its first. SRI argues that allowing SurModics to recover its attorney's fees arising out of claims for royalties under the Awards Policies would be unreasonable. SRI points out that SurModics could refuse to pay any royalties owed by it under § 7.13, fully litigate obviously valid claims to such royalties, and then stick SRI with the bill for its attorney's fees. According to SRI, "[p]ut simply . . . it is unreasonable for SurModics to refuse its obligations under the [Agreement], then demand that SRI assume all

litigation costs, *including those caused by SurModics' nonperformance*." Def. Mem. in Supp. at 25.

The Court has two responses. First, even if the Court agreed with SRI, the Court would be obligated to enforce the clear terms of the Agreement. The wisdom or fairness of those terms is not the Court's business. Second, the Court does not agree with SRI that applying the plain terms of § 8.1(e) results in unfairness to SRI. Even a brief glimpse at the Awards Policies reveals that they are poorly written and that disputes about who is owed what under the Awards Policies are inevitable. It would be entirely reasonable for SurModics, in negotiating the Agreement, to say to SRI: "We're willing to assume some of the liabilities under the Awards Policies, but we're not willing to bear the cost of litigation about who is entitled to what under the Awards Policies. You drafted these Awards Policies; you should bear the cost of your own poor drafting." In short, it would have been entirely reasonable for the parties to agree that, although SurModics would assume some liabilities to Brookwood and SRI employees under the Awards Policies, SRI — the author of the Policies — would bear the cost of any litigation over the Policies' meaning.

In sum, then, the Court holds that, under § 8.1(e), SRI must indemnify SurModics for the attorney's fees that SurModics incurs in defending the royalties claim, regardless of whether SurModics is later found liable on that claim.

### B. Timing of Indemnification

The parties also dispute whether SRI must indemnify SurModics under § 8.1(e) on an ongoing basis or whether SRI may instead wait until the end of the Alabama litigation to indemnify SurModics. Because the parties did not adequately address this question in their

briefs, the Court asked for supplemental briefing. After reviewing the supplemental briefs, the Court concludes that SRI must indemnify SurModics on an ongoing basis.

Unlike the obligation of SurModics to indemnify SRI under § 8.2(b) — an obligation that is triggered by a "breach" of the Agreement by SurModics — SRI's duty to indemnify SurModics under § 8.1(e) is triggered by a "claim[]" against SurModics. In other words, no one can know whether SurModics has any obligation to indemnify SRI until the Alabama litigation concludes and SurModics is found to have breached or not to have breached the Awards Policies (and thus the Agreement). But no one disputes that SurModics has already incurred a "Loss . . . arising out of . . . claims by any current and former employees of SRI or Brookwood for royalties or other payments pursuant to the Awards Policies . . . ." Agreement § 8.1(e). Thus, we need not wait until the Alabama litigation concludes to know whether SRI has any obligation to indemnify SurModics.

Of course, just because SRI can indemnify SurModics on an ongoing basis does not mean that the Agreement requires it to do so. But § 8.5 of the Agreement indicates that the parties did in fact intend for SRI to provide ongoing indemnification of SurModics. That section imposes on an "Indemnifying Party" the duty to "assume the Defense of such Third-Party Claim[s] at its own expense . . . ." Agreement § 8.5(b). Applied to the facts of this case, then, § 8.5 imposed on SRI (the "Indemnifying Party") the duty to assume the defense of the royalties claim brought against SurModics by Gilley and Blatter (the "Third-Party Claim[s]").

Section 8.5 further provides (again as applied to the facts of this case) that if SRI fails to assume the defense of Gilley's and Blatter's royalties claim against SurModics, then SurModics is entitled to "defend [the] Third-Party Claim at the expense of" SRI. Agreement § 8.5(d). Had

SRI fulfilled its duty to assume the defense of SurModics in the Alabama litigation, SRI would almost certainly have paid SurModics's attorneys on an ongoing basis. After all, defense attorneys, unlike plaintiffs' attorneys, are generally paid by the hour and on an ongoing basis. The parties could not have intended that SRI could put itself in a *better* position by *breaching* its duty to assume the defense of SurModics.[8]

SRI argues that, under Delaware law, parties to a contract must include an express provision for ongoing indemnification if they intend for such indemnification. The cases that SRI cites for this proposition, however, only indicate that an express provision is *sufficient* to trigger a duty of ongoing indemnification; those cases do not say that such a provision is *necessary*. See *GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.*, 270 F. Supp. 2d 476, 482 (D. Del. 2003) (discussing contract requiring that "the indemnifying party shall promptly reimburse the indemnified party for expenses as they are incurred . . . ."); *Martinez v. Regions Fin. Corp.*, Civil Action No. 4128-VCP, 2009 WL 2413858, at *4 (Del. Ch. Aug. 6, 2009) (discussing contract requiring the indemnifying party "to pay as incurred, to the full extent permitted by law, all legal fees and expenses . . . ."); *Lillis v. AT&T Corp.*, 904 A.2d 325, 329 (Del. Ch. 2006) (discussing contract requiring the indemnifying party to pay " all legal fees and expenses as and when incurred . . . ."). As best as the Court can tell, no Delaware court has held

---

[8]SRI argues that the § 8.5(b) duty to defend is reciprocal, and that if SRI's failure to defend SurModics entitles SurModics to ongoing indemnification for its attorney's fees, then SurModics's failure to defend SRI likewise entitles SRI to ongoing indemnification. The Agreement, however, assigns the duty to defend only to "Indemnifying Part[ies]," Agreement § 8.5(b), with "Indemnifying Party" being defined as "the Party obligated to provide . . . indemnification," Agreement § 8.5(a). SurModics is not "obligated to provide . . . indemnification" to SRI unless and until SurModics is found to have breached the Agreement. Agreement § 8.2(b). No such finding has yet been made. Because SurModics is not yet an "Indemnifying Party," SurModics has no duty to defend SRI, and § 8.5(b) cannot be used to support a claim by SRI to ongoing indemnification.

that an express contractual provision is required to impose an obligation of ongoing indemnification.

SRI also points to § 8.5(e) as evidence that the parties intended for no ongoing duty of indemnification. Pursuant to § 8.5(e):

> Subject to the other terms of this Article 8, if (i) a final judgment or order in favor of such third party is rendered against the Claiming Party that is not subject to appeal or with respect to which the time to appeal has expired without an appeal having been made or (ii) such Third-Party Claim is settled in accordance with this Article 8 resulting in Losses on the part of the Claiming Party, then the amount of such Losses incurred by the Claiming Party will be paid by the Indemnifying Party.

According to SRI, § 8.5(e) makes clear that indemnification is to occur only after "a final judgment or order in favor of [a] third party is rendered" or a "Third-Party Claim is settled . . . ." Therefore, says SRI, it has no duty to indemnify SurModics until judgment is entered against SurModics in the Alabama litigation or the Alabama litigation is settled.

But SRI reads into § 8.5(e) a negative implication that is not there. Section 8.5(e) says, in essence, that when a final judgment is entered against SurModics in the Alabama litigation (or when the Alabama litigation is settled), SurModics will be entitled to indemnification. Section 8.5(e) does not say that SurModics will *not* be entitled to indemnification *until* a final judgment is entered against it in the Alabama litigation (or the Alabama litigation is settled).

Moreover, § 8.5(e) clearly does not "occupy the field" — that is, address any and all obligations of SRI to indemnify SurModics — because SRI clearly has a duty to indemnify SurModics in circumstances that are not addressed by § 8.5(e). For example, if judgment is entered in *favor* of SurModics on the royalties claim, then SRI will clearly be obligated to indemnify SurModics for the attorney's fees that SurModics incurred in successfully defending

-18-

that claim (as the Court has already held). Yet if SRI's reading of § 8.5(e) were correct, then SRI would never actually have to cut a check to SurModics, because neither of the two events mentioned in § 8.5(e) — entry of final judgment in favor of a third party or settlement of the claim — would ever occur. That could not possibly have been what the parties intended. It is much more plausible to interpret § 8.5(e) to apply not to all obligations to indemnify, but only to those obligations that are triggered by the occurrence of one of the two events described in § 8.5(e).[9]

For these reasons, the Court holds that SRI must indemnify SurModics for its attorney's fees on an ongoing basis.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion for summary judgment of defendant Southern Research Institute [ECF No. 25] is GRANTED IN PART and DENIED IN PART, as more fully described in the body of this order.

---

[9]Because it is clear from the language of the Agreement that the parties intended for ongoing indemnification of SurModics, the Court has not considered extrinsic evidence regarding the parties' intent. *See Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 ("[o]nly when there are ambiguities" in a contract may the intent of the parties be ascertained from matters beyond "the language of the contract."). But the Court notes that, had the Court considered extrinsic evidence, that evidence would have supported the Court's interpretation of the Agreement. Until approximately the time that Gilley and Blatter filed their second amended complaint, SRI paid the attorney's fees incurred by SurModics on an ongoing basis — in either monthly or quarterly intervals. *See* Answer ¶ 26 [ECF No. 7]; Pl. Ex. 27 [ECF No. 35-2].

2. The motion for summary judgment of plaintiff SurModics, Inc. [ECF No. 31] is GRANTED IN PART and DENIED IN PART, as more fully described in the body of this order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: April 17, 2013                    s/Patrick J. Schiltz
                                         Patrick J. Schiltz
                                         United States District Judge